PER CURIAM.
This cause is before this Court on Petition for Review filed by the Board of Governors of the Florida Bar and on Cross-Petition for Review filed by the respondent attorney, John F. Wendel.
The parties seek review of the Referee’s report finding Respondent guilty of misconduct in connection with a divorce case. The Referee concluded that Respondent violated Canons 9, IS, 16, 22 and 32 of the Canons of Professional Ethics; Rules 22, 24, 27 and 28 of Additional Rules Governing the Conduct of Attorneys, 32 F.S.A. in Florida, and F.S. Section 837.01, F.S.A. A two-year suspension was recommended by the Referee. The Board of Governors feels the Referee’s findings warrant a more severe punishment, preferably disbarment for an indefinite period. The Respondent Cross-Petitioner, John F. Wendel, contends a two-year suspension is far too harsh and drastic.
The misconduct occurred when Respondent was representing Terry Green, the plaintiff-husband in a divorce suit. His client was afraid Mrs. Pat Green, the wife, would receive custody of their young daughter and he would lose his draft-exempt status. To solve the problem, Wen-del drafted an “Agreement for Child Custody, Support and Visitation,” collateral to and differing from the language of the final judgment in the divorce suit, which agreement provided in part:
“[Sjince the parties entered into this agreement, Terry has been notified that it is the intention of the United States Selective Service System to draft him in the near future.
“At this time, it appears that the drafting of Terry would be detrimental to all the parties concerned for reason that Terry’s income potential would be severely reduced for at least a two-year period of time.
“It further appears that Terry would not be drafted if he were possessed by lawful court order of the custody of the minor child of the parties.
ARTICLE II.
COVENANTS
“Therefore, in consideration of the mutual promises herein contained and in further consideration of the agreement set forth hereinabove, Terry and Pat specifically promise and agree as follows:
1. That this contract will have precedence by and between the two parties hereto over that certain final judgment *201 for divorce, which is to be entered March 15, 1968, which is to award to Terry the custody of the minor child of the parties, Lisa Ann Green.
2. Terry specifically agrees, the final judgment notwithstanding to the contrary, that Pat is to have custody of the minor child of the parties and that the custody bestowed upon him in said final judgment is only for the purpose of permitting him to retain his draft-exempt status.”
During the Bar proceedings, Wendel testified that he drafted the agreement only after speaking to the defendant-wife’s attorney, Walter Manley. Manley denied having any knowledge of or part in the agreement. However, it is clear in the record the agreement was executed in Manley’s office and subscribed to by two of his legal secretaries as witnesses.
On March 15, 1968, before the agreement was signed, Wendel and his client attended a final hearing in the divorce case. Opposing counsel Manley was not present; there is a dispute as to whether his office had been notified of the hearing. Respondent informed the circuit judge that opposing counsel had notice and that Manley apparently was not present because the parties previously had reached an agreement concerning child custody and all other matters before the court. Wendel then presented evidence on behalf of his client. No mention of the proposed Agreement for Child Custody, Support and Visitation was made at this final hearing and consequently the circuit judge was not aware that such an agreement was contemplated, at least by Respondent at that time.
On March 19, 1968, four days after the final hearing, the agreement was executed by the parties to the divorce. The wife testified before the Referee that she signed only because a man, who identified himself to her as John Wendel, telephoned and threatened her with loss of the child if she did not sign the agreement. Wendel denied making the threats.
The day the agreement was signed, the two attorneys, Wendel and Manley, presented the Final Judgment of Divorce to the circuit judge for filing. The judgment, awarding the child to the husband, did not refer to the agreement giving the child to the wife. The judge was not aware of the existence of the agreement when the final judgment of divorce was filed, and did not learn of it until several months thereafter.
The Referee concluded that Respondent coerced the wife into signing the agreement; that he misrepresented to the court that Manley knew of the hearing date; that the secret custody agreement was entered into to perpetrate a fraud on the court, and that Respondent falsely testified before the Grievance Committee that he prepared the agreement following a discussion with Walter Manley.
We agree that the findings upon the disputed evidence indicate Wendel should be subject to some disciplinary measures, but we do not feel they should be as severe as those recommended by the Referee and the Board of Governors. The evidence in the record is not as clear and convincing to us of misconduct on Respondent’s part to the degree the Referee found it. That is to say, we do not conclude therefrom that Respondent’s misbehavior reached proportions warranting the extremely severe punishment recommended by the Referee and the Board of Governors, respectively. Disbarment and suspension should not be imposed lightly. We have said:
“[Djisbarment is the extreme measure of discipline and should be resorted to only in cases where the lawyer demonstrates an attitude or course of conduct wholly inconsistent with approved professional standards. It must be clear that he is one who should never be at the bar, otherwise suspension is preferable. For isolated acts, censure, public or private, is more appropriate. Only for such single offenses as embezzlement, bribery of a juror or court official and *202 the like should suspension or disbarment be imposed, and even as to these the lawyer should be given the benefit of every doubt, particularly where he has a professional reputation and record free from offenses like that charged against him.” (State ex rel. Florida Bar v. Murrell, Fla.1954, 74 So.2d 221, 223.)
The trial judge was led to believe by Respondent at the final hearing that custody of the child should be given to the father, Respondent’s client, and the judge so decreed; whereas, Respondent contemporaneously secured execution of the agreement giving custody of the child to the wife in order to preserve his client’s draft exempt status. There can be no doubt Respondent was not frank and candid with the court in the matter and his action in this regard cannot be excused.
Nevertheless, the Respondent appears to have assumed that upon the final judgment being filed awarding the custody of the child to the father, the latter was legally entitled immediately thereafter to exercise his own judgment as to the extent to which his divorced wife with his consent could exercise rights concerning the care and custody of the child, and that consequently his client, if he saw fit, was free to enter into the agreement with his former wife. It is not necessary for us to resolve this question in these disciplinary proceedings involving matters relating to the trial judge’s continuing authority concerning the child, its ward; and the extent to which divorced parents may agree inter se concerning the subsequent care and custody of a child which had previously been awarded to one of them.
This legal assumption of Respondent, whether mistaken or not, does pose the corollary question whether he acted in total bad faith or simply rendered advice and services, believing them to be legally proper.
Wie are inclined to accord him the benefit of the doubt to a degree in this particular, but we do not excuse his conduct in procuring the final decree from the judge awarding the custody of the child to the father and keeping secret from the judge his contemporaneous intention and action of procuring execution of the agreement giving custody of the child to the mother.
The record before us shows Respondent to be a young, enthusiastic attorney with a good reputation in his community who has devoted himself to the cause of advancing worthy civic projects but who in this isolated instance was overzealous in his attempt to serve his client. While we certainly do not condone his action, and we agree it was unethical for him to keep from the trial judge the intention to have the secret agreement executed, we do not feel he should be suspended or disbarred due to the extenuating circumstances. He received no pecuniary gain from his actions other than the usual divorce fee. The evidence in this matter is conflicting and leaves open to doubt whether the Referee or the Florida Bar reached the correct conclusions in their respective recommendations for severer discipline of Respondent.
It is the judgment of this Court that Respondent, John F. Wendel, be given a public reprimand; that he be placed on probation for two years, during which time he is not to handle dissolution of marriage cases, and that he pay the cost of these proceedings in the amount of $677.42. Publication of this opinion shall serve as the reprimand.
It is so ordered.
ROBERTS, C. J., and ERVIN, CARLTON, ADKINS and McCAIN, JJ., concur.